IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 23, 2002

## STATE OF TENNESSEE v. JAMES L. McCURRY

**Direct Appeal from the Criminal Court for Roane County**
**No. 12057     E. Eugene Eblen, Judge**

---

**No. E2001-01900-CCA-R3-CD**
**May 20, 2002**

---

The Appellant, James L. McCurry, was convicted by a Roane County jury of one count of premeditated first degree murder and was sentenced to life imprisonment. On appeal, McCurry raises two issues for our review: (1) Whether the evidence presented at trial was sufficient to support a conviction for premeditated first degree murder; and (2) whether the trial court erred by failing to exercise its role as the thirteenth juror. After review, we find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Harold D. Balcom, Jr., Kingston, Tennessee, for the Appellant, James L. McCurry.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Renee W. Turner, Assistant Attorney General; J. Scott McCluen, District Attorney General; and Frank Harvey, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

The Appellant and the victim, Brenda McCurry, married in 1994 and divorced in 1996. Notwithstanding their divorce, the Appellant and victim continued living together in an "off and on" relationship for the next two years. The victim was a real estate agent for Re/Max Realty Company in Kingston, Tennessee. Her co-workers testified that they had observed her at work with black eyes and finger marks around her neck. Despite repeated requests by the victim to leave her alone during their many separations, the Appellant persisted in harassing his ex-wife, including telephoning her at work every day at "roughly five minute intervals."

On September 4, 1998, the parties again separated and the victim told the Appellant to leave their residence. On September 8, 1998, the victim obtained an ex parte order of protection based upon the following allegations:

> I have been divorced 2 years from [the Appellant]. I've tried to get him to leave me alone. I told him to leave Friday, September 4, 1998. I had to get my family to come so he would leave. He told me I had better get some insurance because I was going to need it. He has hit me before and threatened to hit me. He said I was going to be with him till I die. He stalks me and harasses me, calling all the time.

The Appellant left the parties' residence and moved to Taccoa, Georgia, to live with his sister, Valerie Murray. Ms. Murray described her brother during this period as "depressed and sad," explaining that he began "drinking heavily" and became "very resentful." Murray testified that the Appellant told her "more than once" that he was "going to buy a gun to kill [the victim]." On September 27, 1998, the Appellant purchased the pistol which he later used to kill his ex-wife.

Although the Appellant was aware of the protective order's no-contact provision, he continued to call, send packages, and contact the victim. On October 10, 1998, the Appellant purchased ammunition for the murder weapon. On October 12, 1998, the Appellant "decided that [he] would come to Tennessee and kill [the victim]."

Early the next morning, on October 13, 1998, the Appellant awoke, dressed in a suit and tie and drove 4 ½ hours from Taccoa, Georgia, to Kingston, Tennessee, where he entered the side door of the Re/Max Realty Company. At trial, the Appellant admitted that he wore a suit and carried a briefcase to conceal his pistol so he would not be noticed upon entering the building. As he entered the office, the victim and her co-worker, Peggy Giffin, were discussing a package the victim had just received by mail. The package contained cigarettes and a card signed by the Appellant. As the Appellant walked through the door of the office kitchen, he set his briefcase on the table. The Appellant removed the pistol from the briefcase and pointed it straight at the victim. In what Giffin described as a "cold, calm, [and] determined" manner, the Appellant shot the victim three times as the victim attempted to flee to her office. The autopsy report determined the cause of death to be a gunshot wound to the victim's right temple.

As two other employees were calling for emergency assistance, the Appellant walked back to the office kitchen, placed the gun in his briefcase, left the building, and drove approximately 1200 miles from Kingston to Memphis, Tennessee, then through Mississippi, Alabama, and back to Georgia. As he drove, the Appellant disposed of his briefcase and the murder weapon in different locations.

The Appellant surrendered to law enforcement officers in Georgia and was returned to Tennessee.

## ANALYSIS

### I. Sufficiency of the Evidence

The Appellant argues that the evidence presented at trial is insufficient to support his conviction for premeditated first degree murder. Instead, he contends that the evidence presented supports a conviction for voluntary manslaughter because the Appellant acted out of "passion and provocation." We disagree.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *See generally State v. Adkins*, 786 S.W.2d 642, 646 (Tenn. 1990); *State v. Burlison*, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S. Ct. 743 (1995); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992), *cert denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993).

As charged in the indictment in this case, in order to convict the Appellant of first degree murder, the State was required to prove that the homicide was the result of "a premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation is defined as follows:

> As used in subdivision (a)(1) "premeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-202(d); *State v. Sims*, 45 S.W.3d 1, 7-8 (Tenn. 2001). The Appellant argues that the proof supports only a conviction for voluntary manslaughter, which is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a).

-3-

On appeal, the Appellant contends that his "state of passion" was produced by the "adequate provocation of financial and emotional ruin caused [him] by the victim." He specifically argues such provocation "triggered anger and helplessness [and blew] large holes in [his] reasoning ability." Again, in apparent support of this argument, the Appellant asserts that "from the beginning of [his] relationship with the victim, and to its very end, [he] had been transformed from a man who was financially sound to one in bankruptcy, in great part due to the action of the victim, " whom he characterized as "domineering." We find the Appellant's argument flawed for several reasons.

First, the Appellant concedes on appeal that the victim's death was premeditated and intentional. Nonetheless, relying upon the authority of *Toler v. State*, 260 S.W.134, 137 (Tenn. 1923), he argues that a manslaughter conviction may be proper even though proof of premeditation is found. In *Toler*, our supreme court held:

> It is not necessary to reduce killing to manslaughter that the passion should be so great as to render the defendant incapable of deliberation or premeditation. If the circumstances be such as are calculated to produce such excitement and passion as would obscure the reason of an ordinary man and induce him, under such excitement and passion, to strike the blow that causes the death of the deceased, this will reduce the killing to manslaughter. *Seals v. State*, 62 Tenn. 459, 461-62 (1874).

We find the Appellant's reliance on *Toler* misplaced.[1] As previously noted, premeditation, as required for a conviction for first degree murder, is defined in part as requiring "[t]he mental state of the accused at the time the accused allegedly decided to kill . . . be . . . sufficiently free from excitement and passion." Tenn. Code Ann. § 39-13-202(d). Thus, under current law, premeditation by definition, excludes acts resulting from passion and excitement. Logically, a defendant who premeditates a homicide cannot be convicted of manslaughter. If the proof establishes that the homicide is both premeditated and intentional, the crime is first degree murder.

Second, passion on the part of the slayer, no matter how violent, will not relieve the slayer of responsibility for the homicide unless it is produced by "adequate provocation." If no provocation is found, the crime is murder. Anger which would reduce an unlawful homicide to the degree of voluntary manslaughter, must be anger produced by adequate provocation. *Hargrove v. State*, 281 S.W.2d 692, 698 (Tenn. 1955). The issue of what constitutes adequate provocation is a question of fact which must be decided under the particular facts of each case by the jury. *State v. Johnson*, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). When the evidence is conflicting, the jury must resolve these conflicts under proper instructions, and decide whether the homicide is murder or manslaughter. Thus, in this case, it was for the jury to determine whether the killing of the victim by the Appellant occurred in a state of passion produced by provocation or whether the Appellant

---

[1]The supreme court's review in *Toler* involved an analysis of manslaughter which, at the time, was defined as "the unlawful killing of another without malice, either express or implied, but upon a sudden heat of passion." *Toler*, 260 S.W. at 137. Following adoption of the 1989 Criminal Code, the element of malice was deleted from the definition of manslaughter.

simply meant to violently end a long-standing hostility.  In this case, evidence of premeditation is overwhelming: (1) the use of a deadly weapon upon an unarmed victim; (2) declarations by the Appellant of an intent to kill; (3) procurement of a weapon; (4) preparations before the killing for concealment of the crime; and (5) calmness immediately after the killing. *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997).  Accordingly, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the Appellant's acts were premeditated and intentional.  This issue is without merit.

## II.  Motion for New Trial

The Appellant asserts that the trial court failed to exercise its role as the thirteenth juror before denying his motion for new trial. We disagree.  The purpose of the thirteenth juror rule is to provide a "safeguard . . . against a miscarriage of justice by the jury." *State v. Moats*, 906 S.W.2d 431, 434 (Tenn. 1995).  Tennessee Rule of Criminal Procedure 33(f) provides:

> The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence.  If the trial court grants a new trial because the verdict is contrary to the weight of the evidence, upon request of either party the new trial shall be conducted by a different judge.

In *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995), our supreme court established the standard for determining whether the trial judge has performed his or her role as thirteenth juror as follows:

> [No] explicit statement on the record is required by the trial judge that the duty has been performed.  Accordingly, where a motion for new trial is denied without a statement, an appellate court may presume that the trial judge approved the jury's verdict as the thirteenth juror.  Nonetheless, where the record contains statements by the trial judge expressing dissatisfaction or disagreement with the weight of the evidence or the jury's verdict, or statements indicating that the trial court absolved itself of its responsibility to act as the thirteenth juror, an appellate court may reverse the trial court's judgment.

Here, the trial court made no comments "expressing dissatisfaction or disagreement with the weight of the evidence or the jury's verdict" during the trial or in its written order denying the motion for new trial.  To the contrary, the trial court found in its written order that the evidence was sufficient to support the jury's verdict and, thus, approved the verdict.  This issue is without merit.

**CONCLUSION**

After review, we find that the evidence presented at trial, taken in the light most favorable to the State, overwhelmingly supports the Appellant's conviction for premeditated first degree murder. Moreover, we find the trial court properly exercised its role as required by Rule 33(f), Tennessee Rules of Criminal Procedure. Accordingly, the judgment of the Roane County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE